**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAROLYN ROSIPKO, ) | |
| ) | CASE NO.   1:12-cv-00620 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Carolyn Rosipko ("Rosipko") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Rosipko's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On December 30, 2008, Rosipko filed an application for SSI alleging a disability onset date of January 16, 2008. Her application was denied both initially and upon reconsideration.

On February 15, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Rosipko, represented by counsel, and an impartial vocational expert ("VE") testified. On March 4, 2011, the ALJ found Rosipko was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age twenty-eight (28) at the time of her administrative hearing, Rosipko is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Rosipko has a high school education and past relevant work as a cook, secretary, and computer lab aid. (Tr. 19.)

*Relevant Medical Evidence*[1]

### *1. Treatment by Dr. Gates*

Rosipko received mental health treatment from Todd Gates, D.O., beginning in April of 2009 up to November of 2010. (Tr. 631, 753.) In an initial psychiatric evaluation performed on April 14, 2009, Dr. Gates diagnosed Plaintiff with post-traumatic stress disorder, panic disorder with agoraphobia, and social anxiety disorder. (Tr. 753.) Rosipko indicated that she had been under the care of her primary care physician and was placed on major tranquilizers, antidepressants, and sedatives to manage bipolar disorder, depression, and anxiety. (Tr. 754.) She described a traumatic childhood with severe abuse. *Id*. Dr. Gates reported that Rosipko had developed an elective mutism, and was not able to talk until in her adulthood. *Id*. Dr. Gates also indicated that Rosipko's "judgment and impulse control have been excellent in spite of depressive suicidal feelings." (Tr. 753.) He described her as cognitively bright with excellent impulse control and good judgment. *Id*. Her medications were adjusted. *Id*.

On May 19, 2009, Rosipko was doing "extremely well," was less agitated, and her anxiety had subsided dramatically. (Tr. 366.) Her medications were continued without adjustment. *Id*. Counseling notes indicate that a few weeks later, Rosipko was actively seeking employment. (Tr. 370.)

On June 16, 2009, Rosipko was noted a being a bit discouraged after she broke up with her boyfriend and suffered an inappropriate sexual advance. (Tr. 365.) Her goals remained

---

[1] Rosipko's assignments of error revolve around the opinions and care rendered by two of her treating physicians, Todd Gates, D.O., a psychiatrist, and Tamara Lee Gutierrez, M.D. (ECF No. 17 at 12-15.) Therefore, the Court will confine its medical history to the treatment they provided, as it relates to her mental impairments, and other events relevant to her mental health.

"good" and she was to start college classes in the fall. *Id*. She was diagnosed with generalized anxiety disorder and adjustment reaction with depressed mood. (Tr. 365.)

Between June 21 and 25, 2009, Rosipko was hospitalized after presenting at the Emergency Room ("ER") intoxicated and suicidal. (Tr. 377-79.) Rosipko had attempted to hurt herself by cutting her left forearm with a butcher's knife after an argument with family members. (Tr. 380.) After several days of hospitalization, Rosipko felt good and indicated that she was ready to go home. (Tr. 384.)

On July 15, 2009, approximately three weeks after her hospitalization, Rosipko was seen by Dr. Gates, who noted the aforementioned hospitalization and diagnosed major depression recurrent and borderline personality. She was doing well that day and her medications were continued without change. (Tr. 750.) The same day, Dr. Gates completed a Mental Functional Capacity Assessment for the Ohio Department of Job and Family Services. (Tr. 756-57.) He opined that Plaintiff had marked limitations in her ability to do the following: understand and remember detailed instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and, travel in unfamiliar places or use public transportation. (Tr. 756.) He opined that she was moderately limited in the remaining areas. *Id*. Dr. Gates believed that Rosipko was unemployable and that her limitations were expected to last twelve months or more. (Tr. 757.)

Two weeks later, on July 27, 2009, Rosipko told her counselor that she wanted to attend school for radiology and was disappointed that she had been unable to find a job with her degree in computers. (Tr. 748.) She reported frustration with her counselor and psychiatrist believing they "should be teaching me how to have coping skills." *Id*.

3

On September 10, 2009, Rosipko claimed that she could not find any work in her hometown of Orwell, but that she had a part time job (20 hours per week), which she enjoyed. (Tr. 742.)

On September 29, 2009, Rosipko indicated that she was depressed because her physical ailments prevented her from working. (Tr. 738.) Patty Jackson, a Qualified Mental Health Specialist ("QMHS"), encouraged Rosipko to apply for entitlement programs and to follow up with her application for Social Security benefits. *Id*. Rosipko indicated that she would like to go back to work and become a hospital technician. *Id*. She stated that she had enjoyed attending a skills building outing that same day as part of her treatment. *Id*.

On November 18, 2009, Rosipko told Dr. Gates that she was more depressed after she lost her living arrangment and wanted to add medication to her antidepressant regimen. (Tr. 725.) Dr. Gates diagnosed major depression recurrent and borderline personality. (Tr. 725.)

On January 13, 2010, Rosipko told her counselor that she had been attending Dialectical Behavior Therapy ("DBT") and believed that it was helping her learn to manage her emotions. (Tr. 718.) She indicated that she wants to work but could find no jobs in Orwell. (Tr. 718.) She stated that she applied for disability because her doctor had instructed her to do so. *Id*.

On February 9, 2010, Rosipko told Dr. Gates that "things were going a little bit better for her," and that her medicines were working well. (Tr. 708.) She was optimistic about the future and was involved in DBT groups where she was learning how to improve her condition. *Id*.

On March 21, 2010, Rosipko presented at the ER complaining of panic attacks, shortness of breath and shaking. (Tr. 488-91.) She indicated that she had lost her prescription for Klonopin. *Id*. She was given Ativan and discharged. *Id*.

On June 22, 2010, Dr. Gates indicated that Rosipko was functioning reasonably well, but recently had an OVI charge and was being helped by an attorney. (Tr. 674.) Rosipko was optimistic about the future, denied any new problems, and stated that her overall home situation had improved. *Id*. She also indicated that she had fewer panic attacks. Dr. Gates diagnosed panic disorder, and discontinued her prescription for Pristiq as it had become unnecessary. *Id*.

Between July 8, 2010 and July 12, 2010, Rosipko was hospitalized after a drug overdose

where she ingested Klonopin, Vicodin, and Flexeril. (Tr. 456.) She also tested positive for marijuana and opiates. *Id*. On mental status exam, her mood spanned from labile to depressed to irritable and her affect was restricted. (Tr. 454.) Her speech was decreased in rate and volume and her thought content was abnormal. *Id*. She had depressive cognitions, anxious thoughts, and suicidal ideations. *Id*. She was given a Global Assessment of Functioning ("GAF") score of 20. *Id*.

On July 21, 2010, Dr. Gates noted Rosipko's drug overdose, an apparent attempt at suicide. (Tr. 669.) He indicated that she was doing much better and had responded well to Zoloft, which he prescribed for her. *Id*. He diagnosed major depression recurrent. *Id*.

On August 4, 2010, Rosipko told her counselor that she was in a "really, really happy" state. (Tr. 665.)

On August 25, 2010, Dr. Gates noted that Rosipko was doing much better with the addition of Abilify and that she was demonstrating better judgment. (Tr. 656.) Her prescription for Lexapro was increased. *Id*. Dr. Gates diagnosed major depression and borderline personality. *Id*.

On November 17, 2010, Rosipko told Dr. Gates that she was doing extremely well with her medication regimen. (Tr. 631.) He noted that her anxiety and depression are well controlled and that she was looking for a job. *Id*. He continued to diagnose major depression recurrent and panic disorder. (Tr. 631.)

On December 9, 2010, Dr. Gates completed an "Assessment of Ability to do Work-related Activities (Mental)." (Tr. 764-65.) He opined that Rosipko had marked limitations in the following areas: her ability to relate to other people; the degree of deterioration in her personal habits; her ability to maintain concentration and attention for extended periods; her ability to sustain a routine without special supervision; understanding, carrying out and remembering instructions; responding appropriately to co-workers; responding to customary work pressures; responding appropriately to changes in the work setting; using good judgment; performing simple tasks; performing complex, repetitive or varied tasks; and behaving in an emotionally stable manner. *Id*. She was moderately limited in the following areas: her ability to perform

5

daily activities; her ability to perform activities within a schedule, maintain regular attendance, and be punctual; and, responding appropriately to supervision. (Tr. 764.) Dr. Gates opined that Rosipko would be absent from work more than three times a month due to her impairments or treatment. (Tr. 765.) He also concluded that Plaintiff's condition would likely deteriorate under stress, and she would be absent more than three times per month. *Id*. He indicated that she had suffered the above described level of impairment since April 14, 2009. *Id*.

### *2. Treatment by Dr. Gutierrez*

On December 29, 2010, Dr. Gutierrez completed a form titled "Medical Statement Concerning Depression with Anxiety, OCD, PTSD, or Panic Disorder" based upon reviewing two years of her own records and those from Dr. Gates. (Tr. 624-26.) She indicated that Rosipko experiences symptoms of anhedonia, sleep disturbance, decreased energy, difficulty concentrating or thinking, paranoid thinking, apprehensive expectation, persistent irrational fear of social groups, weight gain, feelings of guilt or worthlessness, thoughts of suicide, generalized persistent anxiety, and recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. (Tr. 624.) Dr. Gutierrez opined that Rosipko was moderately limited in her activities of daily living, and markedly impaired in maintaining social functioning. *Id*. She further opined that Rosipko had deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, had experienced repeated episodes of deterioration or decompensation in work or work-like settings, and "sometimes" had a complete inability to function independently outside the home due to panic attacks. (Tr. 624-25.) She had marked limitations in her ability to do the following: work in coordination with and proximity with others without being distracted by them; interact appropriately with the general public; ask simple questions or request assistance; and, respond appropriately to changes in the work setting. (Tr. 625.) Lastly, Dr. Gutierrez opined that Rosipko would be absent from work more than three times a month due to her impairments or treatment. (Tr. 626.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d

524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Rosipko established medically determinable, severe impairments, due to degenerative disc disease, anxiety, and depression. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13.) Rosipko was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Rosipko was not disabled. (Tr. 14-15.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physician Rule*

Rosipko argues that the ALJ violated the "treating physician rule" by failing to properly assess the opinions of her treating physicians, Dr. Gates, a psychiatrist, and Dr. Gutierrez. (ECF No. 17 at 12-15.)

Under Social Security regulations, the opinion of a treating physician is entitled to

8

controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

      With respect to Dr. Gutierrez, Rosipko argues that the ALJ failed to address or to assign a weight to her December 2010 mental health assessment.  (ECF No. 17 at 13.)  With respect to Dr. Gates, Rosipko argues that the ALJ purported to ascribe moderate weight to the July 2009 assessment, but completely ignored the second assessment of December 2010.  *Id*.

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

> The ALJ discussed Dr. Gates's opinion as follows:
>
> The opinion of Dr. Gates is afforded moderate evidentiary weight as it reflects a period where the claimant had recently tried to commit suicide. It is credible to believe that one month after the claimant attempted to commit suicide that she would have moderate to marked functional limitations as described. However, the medical record of evidence shows that the claimant's symptoms wax and wane, but are generally well controlled with medication (Exhibit 34F) (SSR 96-29).

(Tr. 19.)

Rosipko is correct that the ALJ's opinion makes no mention of Dr. Gates's second mental assessment of December 2010, or of Dr. Gutierrez's December 2010 mental assessment.

The Commissioner asserts that Dr. Gutierrez's opinion as it related to mental health matters would not have been entitled to great weight pursuant to 20 C.F.R. § 416.927(d)(5) because she was not a mental health specialist. (ECF No. 18 at 14.) In addition, the Commissioner points out that, in a December 2009 form, Dr. Gutierrez acknowledged that Rosipko's psychiatrist would be able to provide "better details" regarding her depression. *Id*. at 14-15. Social Security Regulations require the ALJ to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. § 416.927(c). While the regulations suggest that more weight should be ascribed to the opinion of a specialist in the area of his or her specialty, §416.927(d)(5) does not relieve the ALJ of his duty to set forth good reasons for rejecting a treating source's opinion. Although the Sixth Circuit has observed that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party... his factual findings as a whole [must] show that he implicitly resolved such conflicts [in the record.]" *Kornecky v. Comm'r of Soc. Sec.,* , 167 Fed. App'x 496, 508 (6th Cir. 2006). However, because Dr. Gutierrez's opinion is that of a treating source and because it is rather consistent with the opinion of Dr. Gates, a treating psychiatrist, the ALJ's failure to address it is a glaring deficiency in his opinion. The ALJ, therefore, failed to apply the correct legal standards.

The ALJ's failure to address Dr. Gutierrez's opinion is compounded by his failure to discuss Dr. Gates's second mental assessment of December 2010. The Commissioner argues that because Dr. Gates's latter assessment mirrors his earlier opinion from July of 2009, it would

10

similarly not be entitled to greater weight.  (ECF No. 18 at 13.)  The Commissioner also cites portions of the record, including Dr. Gates's own treatment notes, and concludes that the December 2010 assessment was inconsistent with the evidence of record.  *Id*. at 13-14.  The ALJ gave two reasons for his rejection of Dr. Gate's earlier mental assessment: (1) the functional limitations assessed by Dr. Gates occurred just one month after Rosipko's June 2009 suicide attempt; and, (2) Rosipko's symptoms "wax and wane" and are "generally well controlled with medication."  (Tr. 19.)

The first reason is undermined by Dr. Gates's second assessment, which was given over a year and a half after the June 2009 suicide attempt, and four months after a subsequent suicide attempt in July of 2010.  Despite the passage of time, Dr. Gates continued to assess marked limitations in numerous areas of functioning.  The second reason given by the ALJ is too perfunctory to allow this Court to conduct a meaningful review, as it cannot discern why the ALJ gave the treating physicians' opinions such minimal weight.  *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm. of Soc. Sec*., 378 F.3d 541, 544-546 (6th Cir. 2004).  The ALJ's conclusory opinion does not offer a sufficient explanation of why the opinions of Dr. Gates and Dr. Gutierrez were ignored.  The conclusion that Rosipko's symptoms waxed and waned or were generally controlled with medication between June of 2009 until the hearing decision appears to be that of the ALJ alone.[3] The Commissioner, in his brief before this Court, attempts to ameliorate the deficiency in the ALJ's analysis by offering explanations, with citations to the record, that would support the ALJ's conclusion.  (ECF No. 18.)  The Commissioner points out that, at various times, Rosipko's anxiety was well controlled, that she was looking for a job, and that she was working

---

[3] The Court is particularly troubled by the ALJ ascribing significant weight to the opinions of non-treating sources regarding Rosipko's mental health limitations where such opinions were rendered prior to two suicide attempts and without the benefit of three mental assessments by treating physicians – two of which the ALJ failed to address.  (Exhs. 5F, 12F, and 13F.)

11

part-time. *Id*. Though the Commissioner's arguments are not entirely unpersuasive, they cannot cure a deficient opinion by offering explanations never offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's post hoc rationale that obesity is per se remediable where there was no factual basis or findings of fact in the record to support such an argument).

As such, Rosipko's first assignment of error is well taken and this matter should be remanded for a new decision that adequately explains the weight accorded to the various medical sources of record in compliance with 20 C.F.R. § 416.927. Though the ALJ is not required to credit the opinions of Dr. Gates or Dr. Gutierrez as it relates to Rosipko's mentally based functional limitations, the ALJ must set forth good reasons for rejecting their opinions and give a sufficient explanation that would allow this Court to trace the path of the ALJ's reasoning.

*RFC/Hypothetical Question*

Rosipko also argues that the ALJ erred at Steps Four and Five by formulating an RFC that did not accommodate the limitations the ALJ found at Step Three. An RFC determination is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of*

12

*Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  However, because the Court finds that a remand is otherwise necessary and because the RFC may well change after further review, this argument is rendered moot.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White<br>United States Magistrate Judge

Date: November 19, 2012

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**